UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:23-cv-00710-CCE-JLW

PRESQUE ISLE VILLAS CONDOMINIUM
HOMEOWNERS ASSOCIATION, INC.,

        Plaintiff,

v.

QBE INSURANCE CORPORATION,

        Defendant.

**ANSWER**

COMES NOW Defendant, QBE Insurance Corporation ("Defendant" or "QBE"), by and through the undersigned counsel, pursuant to the North Carolina Rules of Civil Procedure and all applicable law, and hereby answers and asserts its affirmative defenses to the Complaint of Plaintiff Presque Villas Condominium Homeowners Association Inc., ("Presque Isles" or "Plaintiff") and would allege and state as follows[1]:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff is a nonprofit corporation duly organized and existing under the laws of the State of North Carolina, and at all times relevant hereto was transacting business in Orange County, North Carolina.

**ANSWER: Upon information and belief, admitted.**

---

[1] All allegations not expressly admitted are denied.

Case 1:23-cv-00710-CCE-JLW   Document 7   Filed 09/05/23   Page 1 of 21

2. Upon information and belief, Defendant is a Pennsylvania corporation, duly recognized to transact business in the State of North Carolina, and at all times relevant hereto, was transacting business in Orange County, North Carolina.

**ANSWER: Admitted.**

3. This Court has jurisdiction over the subject matter of this action pursuant to, *inter alia*, Section 7A-243 of the North Carolina General Statutes.

**ANSWER: QBE admits that this Honorable Court has subject matter jurisdiction for this action only.**

4. This Court has personal jurisdiction over the Defendant pursuant to, *inter alia*, Section 1-75.4 of the North Carolina General Statutes.

**ANSWER: QBE admits that this Honorable Court has personal jurisdiction for this action only.**

5. This Court is the proper venue for this action pursuant to, *inter alia*, Section 1-76 of the North Carolina General Statutes.

**ANSWER: QBE admits that following the removal of this action to the Middle District of North Carolina that the venue in this Honorable Court is proper for this action only.**

6. Further, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

2

**ANSWER**: QBE admits that following the removal of this action to the Middle District of North Carolina that the venue in this Honorable Court is proper for this action only.

## FACTUAL ALLEGATIONS

7.      Plaintiff restates and realleges all of the allegations contained in this Complaint as if fully set forth herein verbatim.

**ANSWER**: QBE incorporates its prior answers to Paragraphs 1 through 6 above, as if fully stated herein.

8.      Prior to July 5, 2020, and in consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its Policy No. MC 1800000017201 (the "Policy"), effective March 15, 2020 through March 15, 2021. A true and accurate copy of the policy is attached hereto and incorporated by reference as "**Exhibit A**".

**ANSWER**: QBE admits it entered into an insurance contract with Plaintiff numbered MC 1800000017201 which was effective March 15, 2020, through March 15, 2021 (the "Policy"). The Policy provided certain insurance coverage subject to the Policy's terms and conditions. The Policy is a written document which speaks for itself and is therefore the best evidence as to its contents, terms, conditions, provisions, exclusions, limitations, and limits of liability. QBE denies all remaining allegations.

3

9.     The policy insures against property damage to Plaintiff's property located at 101 Presque Isle Lane, Chapel Hill, NC 35712 [*sic*] (the "Insured Property"), and the Policy likewise insures against loss of Hail/Wind damage. Specifically, the Policy provides coverage for the "Dwelling, including attached structures." (*See* Ex. A).

**ANSWER: QBE admits the Policy provided certain insurance coverage to Plaintiff's property located at 101 Presque Isle Lane, in Chapel Hill, North Carolina (the "Property") subject to the Policy's terms and conditions. The Policy is a written document which speaks for itself and is therefore the best evidence as to its contents, terms, conditions, provisions, exclusions, limitations, and limits of liability. QBE denies all remaining allegations.**

10.     The Policy is an all-perils policy providing coverage for all "sudden and accidental direct physical loss to property," and covers property repairs on a full replacement cost basis, or "the whole amount of loss for property covered." (*See* Ex. A).

**ANSWER: The Policy is a written document which speaks for itself and is therefore the best evidence as to its contents, terms, conditions, provisions, exclusions, limitations, and limits of liability.**

11.     The Policy covers various types of expenses, including mitigating expenses for the reasonable and necessary costs incurred for temporary repairs to protect covered property from further imminent covered loss. (*See* Ex. A).

4

**ANSWER**: **The Policy is a written document which speaks for itself and is therefore the best evidence as to its contents, terms, conditions, provisions, exclusions, limitations, and limits of liability.**

12.    On or about July 5, 2020, the above-referenced property suffered damage from a sudden and accidental direct physical loss as a result of Hail/Wind. The Policy was in effect at the time of the loss.

**ANSWER**: **QBE admits that the Policy was in effect on July 5, 2020. QBE lacks information sufficient to admit or deny the remaining allegations of Paragraph 12, and therefore denies the same.**

13.    Plaintiff promptly and timely notified Defendant of the damage to the property as a result of the loss and made a claim pursuant to the Policy. As a result, Defendant assigned an adjuster ("Adjuster") to investigate Plaintiff's claim for sudden and accidental direct physical loss. The Adjuster was authorized as Defendant's representative and agent for purposes of the claim.

**ANSWER**: **QBE admits that Plaintiff provided notice to QBE of the alleged damage to the Property from the alleged July 5, 2020 loss event (the "Claim"). QBE further admits that it assigned an adjuster to investigate Plaintiff's Claim. The allegations regarding representation and agency are legal conclusions to which no response is required; to the extent a response is required, denied.**

5

14.     At all times, Plaintiff made themselves and their property available to, and fully cooperated with, the Defendant and its representative and agent to inspect and investigate the damages caused by the loss.

**ANSWER**: **Denied.**

15.     Defendant, through its Adjuster, performed a site inspection of Plaintiff's property.

**ANSWER**: **Admitted.**

16.     When Adjuster undertook the handling of the disposition of the claim, Adjuster incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim.

**ANSWER**: **The allegations in the foregoing paragraph are legal conclusions to which no response is required. To the extent a response is required, denied.**

17.     Defendant, through its Adjuster, grossly underestimated the scope of damages sustained to the Plaintiff's property as a result of the Hail/Wind event. Defendant failed to properly investigate the damages and estimated Plaintiff's total property damage to be $5,057.10. A true and accurate copy of the Defendant's estimate is attached hereto and incorporated by reference as "**Exhibit B**".

**ANSWER**: **The estimate is a written document which speaks for itself and is therefore the best evidence as to its contents. QBE denies all remaining allegations of Paragraph 17.**

6

18.     As a result of Defendant gross underestimation, Plaintiff request multiple times that Defendant reconsider its position regarding Defendant's estimate. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny any additional payment on Plaintiff's claim. Furthermore, the Defendant continued to ignore the opinions of the Plaintiff's experts as to the extent of damage and the amount it will cost the Plaintiff to be properly indemnified for their loss.

**<u>ANSWER</u>: Admitted that Plaintiff requested QBE reconsider its position on the value of the Claim. QBE denies all remaining allegations.**

19.     Plaintiff made repeated requests for payment of the claim, including written demand sent to Defendant May 9th, 2022 ("Written Demand"). A true and accurate copy of the Written Demand is attached hereto and incorporated by reference as "**Exhibit C**". Despite this Written Demand for $727,492.40 less previous payments, Defendant continued to frivolously deny Plaintiff's claim without just cause when, under one of more portions of the Policy, the obligation to settle the claim became reasonably clear.

**<u>ANSWER</u>: The May 9, 2022, letter is a written document which speaks for itself and is therefore the best evidence as to its contents. QBE denies all remaining allegations.**

20.     The Plaintiff's Written Demand to Defendant was a letter of representation from Plaintiff's counsel and a formal bad faith demand. After putting

Defendant on notice of a potential lawsuit, through the formal bad faith demand, the Defendant continued to deny Plaintiff's claim without just cause.

**ANSWER: The May 9, 2022, letter is a written document which speaks for itself and is therefore the best evidence as to its contents. QBE denies all remaining allegations.**

21.     Defendant did not act fairly or honestly toward the Plaintiff with due regard to the Plaintiff's claim & interests when Defendant, under all of the circumstances articulated herein, failed to compensate the Plaintiff for their damages in direct breach of the terms and conditions of the Policy.

**ANSWER: Denied.**

22.     Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

**ANSWER: Denied.**

23.     There exists a genuine, justifiable controversy between the Plaintiff and Defendant as to whether Defendant is responsible for coverage for the replacement cost of the actual physical damage to Plaintiff's property caused by the sudden and accidental direct physical loss that occurred on about July 5, 2020. Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

**ANSWER**: **QBE admits that Plaintiff contends there is a controversy between the Parties regarding coverage for the alleged Loss Event. QBE denies all remaining allegations of Paragraph 23.**

24.     Plaintiff has suffered physical damage to their property in an amount to be determined at trial.

**ANSWER: Denied.**

## FOR A FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

25.     Plaintiff hereby realleges and incorporates by reference all prior allegations set forth in this Complaint.

**ANSWER**: **QBE incorporates its prior answers to Paragraphs 1 through 24 above, as if fully stated herein.**

26.     Plaintiff has performed all conditions to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, and mitigation of damages to the property, or the Defendant has waived any and all other conditions.

**ANSWER: Denied.**

27.     Under the terms of the Policy, Defendant is required to compensate the Plaintiff for the proper repair of all sudden and accidental direct physical losses to the Insured Property.

**ANSWER**: **The Policy is a written document which speaks for itself, subject to all terms and conditions of the Policy. QBE denies all remaining**

9

**allegations of Paragraph 27, including any implication that the subject loss is a Covered Cause of Loss.**

28. Despite Plaintiff's timely Written Demand for Defendant to pay the covered losses, Defendant continued to refuse payment on Plaintiff's claim under the terms of the Policy, which caused further delay in fully indemnifying the Plaintiff

**ANSWER: Denied.**

29. Defendant failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's claim according to the terms of the Policy.

**ANSWER: Denied.**

30. Defendant used the tactic of denying compensation to the Plaintiff for their covered losses that were sustained due to the sudden and accidental direct physical loss. Further, Defendant used the tactic of delaying payment to the Plaintiff in an effort to misrepresent the language of the Policy.

**ANSWER: Denied.**

31. As a result of the Defendant's denying and delaying payment on Plaintiff's claim, Plaintiff sustained additional covered losses from mitigation and temporary repairs of the direct physical damage to the Insured Property in an amount to be determined at trial.

**ANSWER: Denied.**

10

32.     Plaintiff has been damaged, and continues to sudden significant damages, as a direct result of Defendant's breaches of the respective insurance contract and failure to compensate the Plaintiff for the proper repair of all sudden and accidental direct physical losses to the Insured Property.

**ANSWER**: **Denied.**

33.     As a direct and proximate result of the Defendant's breach of the Policy, Plaintiff has been damaged in an amount in excess of Seven Hundred Twenty-Seven Thousand Four Hundred Ninety-Two and 40/100 Dollars ($727,492.40), the precise amount to be proven at the trial of this matter, including without limitation, loss in value, incidental, restitution, and consequential damages, together with interest, costs, and attorneys' fees, and other such special and exemplary damages.

**ANSWER**: **Denied.**

## FOR SECOND CAUSE OF ACTION
### (Bad Faith)

34.     Plaintiff hereby realleges and incorporates by reference all prior allegations set forth in this Complaint.

**ANSWER**: **QBE incorporates its prior answers to Paragraphs 1 through 33 above, as if fully stated herein.**

35.     In handling the claim described in this Complaint, Defendant acted in bad faith amounting to willful or wanton conduct evincing a reckless disregard for

11

the well-being of Plaintiff's Insured Property. These bad faith action, include, but are not limited to, *inter alia*:

    a. Failing to fully and adequately investigate, study, understand or appreciate the nature and extent of the damages to Plaintiff's Insured Property;

    b. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

    c. Failing to adjust the claim properly;

    d. Failing to properly consider documentation and other information from Plaintiff in support of the claim;

    e. Compelling the Plaintiff to institute litigation to recover amounts due under the Policy by offering substantially less than the amounts to which a reasonable person would have believed it was entitled under the circumstances;

    f. Failing to utilize appropriately skilled and trained personnel to adjust and handle the claim described herein;

    g. Failing to properly manage and supervise the handling and adjustment of the claim; and

    h. Failing to exercise reasonable care under the circumstances, and being careless, willful and wanton in such other particulars not herein set forth but as shall be shown at the trial of this action.

       **<u>ANSWER</u>: The allegations in this paragraph, including all subparts, are denied.**

36. The conduct of Defendant demonstrates willful and oppressive conduct and a misuse of power and authority, all tantamount to outrageous conduct and intentional and reckless disregard of Plaintiff's rights under the Policy.

**ANSWER: Denied.**

37. As a direct and proximate result of the Defendant's bad faith, Plaintiff has been damaged in an amount in excess of Seven Hundred Twenty-Seven Thousand Four Hundred Ninety-Two and 40/100 Dollars ($727,492.40), the precise amount to be proven at the trial of this matter, including without limitation, loss in value, incidental, restitution, consequential and punitive damages, together with interest, costs, and attorneys' fees, and other such special and exemplary damages.

**ANSWER: Denied.**

### FOR A THIRD CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices; Damages)

38. Plaintiff hereby realleges and incorporates by reference all prior allegations set forth in this Complaint.

**ANSWER: QBE incorporates its prior answers to Paragraphs 1 through 37 above, as if fully stated herein.**

39. The actions of Defendant as generally set forth herein constituted unfair and/or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Specifically, but not limited to, violation of N.C. Gen. Stat. § 58-63-15 (11), which is deemed as a matter of law violation of N.C. Gen. Stat. § 75-1.1, including the Defendant's

Case 1:23-cv-00710-CCE-JLW   Document 7   Filed 09/05/23   Page 13 of 21

committing and performing the following action/inaction with such frequency as to

indicate its general business practice:

a. Misrepresenting pertinent fact or insurance policy provisions relating to coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information.

e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

i. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured;

j.  Making claims payments to insured or beneficiaries not accompanied by [a] statement setting forth the coverage under which the payments are being made;

k.  Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

l.  Delaying the investigation or payment of claims by requiring an insured claimant, or the physician, of [or] either, to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;

m.  Failing to promptly settle claims where liability has become reasonably clear, under on portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

n.  Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

**ANSWER: The allegations in this paragraph, including all subparts, are denied.**

40.  These acts and omissions by defendants [*sic*] are unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 and are in and affecting commerce within the State of North Carolina.

**ANSWER: Denied.**

41.     As a direct and proximate result of Defendant's actions as generally described herein, Plaintiff has been damaged in amount in excess of Seven Hundred Twenty-Seven Thousand Four Hundred Ninety-Two and 40/100 Dollars ($727,492.40), the precise amount to be proven at the trial of this matter, including without limitation, loss in value, incidental and consequential damages, reasonable attorney's fees, punitive damages, and other such special and exemplary damages, which are subject to be trebled under N.C. Gen. Stat. § 75-16.

**ANSWER**: **Denied.**

### FOR A FOURTH CAUSE OF ACTION
### (Punitive Damages)

42.     Plaintiff hereby realleges and incorporates by reference all prior allegations set forth in this Complaint.

**ANSWER**: **QBE incorporates its prior answers to Paragraphs 1 through 41 above, as if fully stated herein.**

43.     As alleged herein, Plaintiff is entitled to compensatory damages from Defendant.

**ANSWER**: **Denied.**

44.     Defendant's actions as generally described and set forth herein were fraudulent, willful and wanton and/or made with reckless disregard for Plaintiff's rights, interests and/or property.

**ANSWER**: **Denied.**

16

45.     As a result of actions by the Defendant as generally described herein, Plaintiff is entitled to recover punitive damages from Defendant in such an amount as shall be established at trial.

**ANSWER**: **Denied.**

## AFFIRMATIVE DEFENSES

QBE asserts the following Affirmative Defenses to Plaintiff's Complaint and hereby reserves the right to amend or supplement these defenses as information becomes available and known.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint and all of its claims are barred, in whole or in part, as it fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint and all its claims are barred, in whole or in part, to the extent Plaintiff failed to mitigate or minimize any or all of its alleged damages.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint and all of its claims are barred, in whole or in part, due to the applicable Statue of Limitations.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's damages are barred, in whole or in part, due to the terms, conditions, exclusions, limitations, endorsements, and other provisions of the Policy. QBE incorporates the Policy by reference as if fully set forth herein.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff's Complaint is barred because Presque Isle failed to exhibit the damages when QBE reasonably requested, instead alleging that further inspection and adjustment by QBE was a "waste of time." Presque Isle's failure to cooperate is a direct breach of its obligations under the insurance contract to cooperate with QBE in the event of loss and these actions inhibited QBE from adjusting the claim, despite its continuous efforts to do so.

## SIXTH AFFIRMATIVE DEFENSE

The Plaintiff failed to comply with post-loss duties outlined in the insurance contract. Namely, the Plaintiff failed to keep an accurate record of repair of the loss, failed to demonstrate that the wind storm, which contained winds of 17 miles per hour, qualified as a catastrophic event triggering the need for a full roof replacement under the insurance contract, failed to show QBE the Property as it was after the loss, and failed to provide QBE with records and documents QBE requested that would demonstrate the condition of the Plaintiff's Property subsequent to the loss. The Plaintiff's failure to comply with its post-loss duties under its insurance contract with QBE resulted in material prejudice to QBE's ability to investigate the claimed loss.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to the application of the Policy's provisions:

18

**COMMERCIAL OUTPUT PROGRAM PROPERTY COVERAGE PART**

\* \* \*

**WHAT MUST BE DONE IN CASE OF LOSS**

\* \* \*

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

\* \* \*

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by the Commercial Output Program coverages.

\* \* \*

*AAIS CO 1000 10 02 (Pp. 25-30 of 31)*

## EIGHTH AFFIRMATIVE DEFENSE

The actions of Presque Isle's public adjuster created substantial, unnecessary delay and obstacles to adjustment of the claim. Therefore, any allegations of bad faith related to delay in adjustment of the claim or cooperation fail due to Presque Isle's own negligence or the negligence of its public adjuster. This argument is supported by North Carolina General Statutes, outlining the duty of a public adjuster to cooperate and work with insurance representatives in good faith. *See*, N.C.G.S. §58-33A-80.

## NINTH AFFIRMATIVE DEFENSE

QBE reserves the right to allege any additional affirmative defenses, as the

19

facts become known.

WHEREFORE, the Defendant, QBE Insurance Corporation, having fully answered the Complaint of Plaintiff and asserted its Affirmative Defenses, respectfully prays the Court as follows:

1.      That Plaintiff shall have and recover nothing from QBE and that Plaintiff's Complaint be dismissed with prejudice;

2.      That QBE's Affirmative Defenses be sustained;

3.      That the costs and reasonable attorneys' fees QBE incurs defending this action be taxed to Plaintiff; and

4.      For such other and further relief as this Court deems just and proper.

This the 5th day of September, 2023.

BUTLER WEIHMULLER KATZ CRAIG LLP


 /s/ L. Andrew Watson_____
L. Andrew Watson
NC Bar No.: 41812
11525 N. Community House Road, Suite 300
Charlotte, North Carolina 28277
Mail Center: 400 North Ashley Drive, Suite 2300
Tampa, FL 33602
Telephone:  (704) 543-2321
Facsimile:   (704) 543-2324
Email:        awatson@butler.legal
*Attorneys for Defendant QBE Insurance Corporation*

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September, 2023, I served a true and correct copy of the foregoing **ANSWER** by placing the same, postage prepaid, in the United States Mail and via email addressed to the following persons, as well as filing the same with the above-captioned court via ECF Pacer:

> Raford W. Bussey
> Holder, Padgett, Littlejohn + Prickett, LLC
> P.O. Box 1804
> Greenville, SC 29602
> rubssey@hplplaw.com
> *Counsel for Plaintiff*

/s/ L. Andrew Watson
L. Andrew Watson